# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MARK MANASSE,

          Petitioner,

v.

UNITED STATES OF AMERICA,

          Respondent.

Civil Action No. 15-4153 (JLL)

**OPINION**

**LINARES**, District Judge:

Presently before the Court is the motion of Mark Manasse ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255 (ECF No 1). Petitioner filed his motion to vacate on or about June 15, 2015. (*Id.*). Following this Court's order to answer (ECF No. 3), the Government filed a response on October 1, 2015 (ECF No. 5), to which Petitioner replied (ECF No. 6). This Court held an evidentiary hearing on Petitioner's motion on April 28, 2016. For the following reasons, this Court will deny Petitioner's motion and deny him a certificate of appealability.

## I. BACKGROUND

On March 2, 2012, Petitioner Mark Manasse was charged by way of a superseding indictment with numerous offenses including a count of conspiracy to distribute and possess with the intent to distribute crack cocaine in violation of 21 U.S.C. § 846. (Docket No. 11-768 at ECF No. 149). Following plea negotiations, Petitioner ultimately elected to plead guilty pursuant to a plea agreement to the one count of conspiracy to distribute and possess with intent to distribute cocaine in exchange for the Government's dropping of the remaining charges against him. (*See*

Plea Agreement, Document 2 attached to ECF No. 5 at 1-2). As to sentencing, Petitioner's plea agreement provided as follows:

> [Petitioner's guilty plea to a violation of 21 U.S.C. § 846] carries a statutory maximum prison sentence of Life, a mandatory minimum sentence of 10 years, and [the relevant statutory fines].
>
> The sentence to be imposed upon [Petitioner] is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. § 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The [Guidelines] are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. Th[e United States Attorney] cannot and does not make any representation or promise as to what guidelines range may be found by the sentencing judge, or as to what sentence [Petitioner] ultimately will receive.

(*Id.* at 2-3). The Plea Agreement also contained a waiver of Petitioner's appellate and collateral rights except to the extent that Petitioner sought to challenge a sentence outside of the statutory range or the Court's determination as to criminal history category. (*Id.* at 4, 7). Petitioner and his attorney signed that agreement on December 27, 2012. (*Id.* at 6).

Petitioner appeared before this Court for his plea hearing on January 7, 2013. (Document 3 attached to ECF No. 5). Prior to the hearing, Petitioner and his attorney prepared an application for permission to enter a plea of guilty pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (*See* Rule 11 Application, Docket No. 11-768 at ECF No. 193). By signing that application, Petitioner acknowledged that his plea of guilty carried a statutory minimum sentence of ten years, a statutory maximum of life, and significant fines. (*Id.* at 3-4). Petitioner likewise acknowledged that his sentence would be imposed by this Court in the sole discretion of the sentencing judge, subject to the Sentencing Reform Act and the advisory Sentencing Guidelines. (*Id.* at 4). Petitioner further stated that his counsel had explained the Sentencing Guidelines and

their applicability to him. (*Id.*). Likewise, Petitioner specifically acknowledged that he "will have no right to withdraw [his] plea on the grounds that anyone's prediction as to the Guidelines range or expectation of sentence proves inaccurate." (*Id.* at 5). Both Petitioner and his attorney signed the application. (*Id.* at 7-8).

During Petitioner's plea hearing, this Court engaged in an extensive colloquy with Petitioner. (*See* Document 3 attached to ECF No. 5 at 8-22). During that colloquy, Petitioner confirmed with the Court that he had spoken to his lawyer regarding his plea and that she had answered any questions he had with regard to the offered plea deal and Petitioner's indictment. (*Id.* at 8-9). Petitioner further stated that he was satisfied with counsel's representation in this matter, that he had signed the plea agreement, and that he had fully read the plea offer for himself and felt that he understood its contents. (*Id.* at 9-14). After explaining to Petitioner the rights that he would be giving up by pleading guilty, including his right to a trial by jury and to confront the witnesses against him (*Id.* 14-16), this Court provided Petitioner with the following information regarding his sentence:

> [THE COURT:] . . . you should understand that the plea agreement is only a recommendation to me. It is a little different than it is in State Court. In Federal Court, I don't have to go along with the plea agreement. Now, normally I do, okay?
>
> [Petitioner:] Yes.
>
> THE COURT: All right. Also, you should understand that in determining what is the appropriate sentence in your case, I am going to look at the statutes, which [are] the laws, that deal with the type of crime that you are charged with committing, and I am going to also look at the sentencing guidelines. I will explain those to you in a minute.
>
> The sentencing guidelines are just guidelines. They set forth or indicate certain maximums and certain minimums and circumstances under which I can sentence you either above the maximum or below the minimum. They suggest that I take into

3

account many factors, like whether or not you have a prior record, okay, what was the amount of the drugs involved, what was the amount of the money, if there was money involved, who were your victims, what was the role that you played in the commission of this offense, did you obstruct justice, did you cooperate with the Government, did you plead guilty, did you plead guilty in a timely fashion, and a bunch of other factors, all of which I don't know if they apply to you today as we sit here. And those guidelines, as I said, are not mandatory on the Court. I don't have to follow them, but I am going to consult them in making a determination of what is an appropriate sentence in your case. Has your attorney explained to you how the guidelines work?

[Petitioner:] Yes, your Honor.

THE COURT: Now, even though your attorney may have told you where she thinks you may fall within the guidelines or the lawyer for the Government may have said something, that is only an estimated guess on their part, because they don't know exactly and precisely where you are going to fall within the guidelines. They can only give you an educated guess based on their experience where they think you are going to fall. But if they turn out to be wrong, and I think you fall into a different spot in the guidelines, you are not going to be allowed to take back your guilty plea. Do you understand that?

[Petitioner:] Yes, your Honor.

THE COURT: Also, there are also statutes or laws that set forth certain sentences in a case like yours. You are accused of a felony, and if I accept your guilty plea today to Count one of the indictment, you would be adjudged guilty of that felony as of today. . . .

[The Court then explained to Petitioner the collateral consequences of a felony conviction including as to voting rights, ownership of firearms, serving on a jury, and holding public office, which Petitioner stated he understood.]

THE COURT: Now, also this type of a felony conviction [is subject to] laws that indicate [t]hat the maximum time that you can get for this kind of offense . . . is life imprisonment.

Now, there is a minimum of ten years unless there are some special circumstances under which you could be sentenced to less than ten years[.]

4

(*Id.* at 16-18). This Court also explained to Petitioner the potential fines and periods of supervised release to which he would be subject, all of which Petitioner stated he understood. (*Id.* at 18-19). After Petitioner confirmed that he had had enough time to discuss all of these matters with his attorney, Petitioner provided the factual basis for his guilty plea, which this Court then accepted. (*Id.* at 22-26).

Petitioner thereafter appeared before this Court for sentencing on July 23, 2013. (Document 4 attached to ECF No. 5). During sentencing, counsel for Petitioner presented numerous arguments in support of a significantly lower sentence than that ultimately entered by the Court. (*Id.* at 11-45). Specifically, Petitioner's counsel argued that Petitioner should not be subject to the career offender guideline, that he should not receive a supervisory role enhancement, that Petitioner should not receive an enhancement based on violent conduct in the conspiracy to which he pled guilty, that a high sentence would create a sentencing disparity between Petitioner's proposed PSR sentencing range and that of his co-conspirators, and that the sentencing factors supported a lenient sentence. (*Id.*). Counsel thus argued that a sentence between 120 and 140 months would be appropriate, even in the event the Court felt that Petitioner's role in the conspiracy required a heavier sentence than that received by Petitioner's co-conspirators. (*Id.* at 38). This Court ultimately rejected many of these arguments and ultimately sentenced Petitioner to 325 months' imprisonment as well as the appropriate terms of supervised release and appropriate fines. (*See* Judgment of Conviction, Docket No. 11-768 at ECF No. 223).

Petitioner appealed his sentence, but the Third Circuit dismissed his appeal in April 2014 following a motion for summary affirmance without full briefing by the Government which sought to enforce the appellate waiver contained in the plea agreement against Petitioner. (Docket No. 11-768 at ECF No. 238). Petitioner thereafter filed the instant motion to vacate sentence on or

about June 8, 2015. (Document 1 attached to ECF No. 1 at 9). Following briefing by the Government and Petitioner, this Court ordered that an evidentiary hearing be held as to Petitioner's claim that trial counsel had been constitutionally ineffective during the plea hearing stage of his criminal proceedings. (ECF No. 7). Counsel was therefore appointed to represent Petitioner, and the hearing was held on April 28, 2016. (ECF No. 10, 12).

At the hearing, Petitioner first withdrew all of his claims other than the one in which he asserted that trial counsel was ineffective in advising him with regards to his guilty plea. (*See* ECF No. 13 at 5-9). During the hearing, this Court heard testimony from Petitioner, the mother of Petitioner's child, Petitioner's brother, and Petitioner's trial counsel. During his testimony, Petitioner asserted that he had originally wanted to go to trial, and was not interested in a plea deal. (ECF No. 13 at 13). Petitioner testified that trial counsel told him that she "can get [Petitioner] 15" years, but that he initially rejected that offer as requiring he serve too much jail time. (*Id.*). Petitioner claimed, however, that his family and his then girlfriend, the mother of his child, convinced him that fifteen years was an acceptable period of incarceration, and convinced him to accept that offer. (*Id.* at 14-15). Petitioner, however, prefaced this decision entirely on his assertion that counsel had essentially promised him that she could get him a sentence of fifteen years. (*Id.*). Petitioner also specifically claimed that counsel promised that she could obtain such a sentence by speaking to the sentencing judge in chambers. (*Id.* at 16-17).

Upon questioning by this Court, however, Petitioner confirmed that he had been told during the plea hearing that his sentence would be solely in the discretion of this Court, but claimed that he assumed that his lawyer knew what she was doing when she said that she could obtain a fifteen year sentence. (*Id.* at 19). On cross examination, Petitioner likewise admitted that he understood and remembered that he had been told by this Court about the fact that his sentence would be in

the sole discretion of the court after reviewing applicable guidelines and sentencing factors, and that any sentencing estimate he had been given was just that, an estimate. (*Id.* at 22). On cross-examination, Petitioner likewise testified that he had signed the application for permission to plead guilty, in which he had asserted that no person, including his lawyer, had made any promise or suggestion of any kind that he would receive a lighter sentence than that which this Court decided to impose in its discretion. (*Id.* at 25-26). Although Petitioner admitted that he was told by counsel that only the sentencing judge could tell him what sentence he would actually receive, Petitioner explained his position as follows: "listen, I was basically advised [by counsel] that I was going to get 15. So when she explained it to me, she's basically like, you're going to have to go along with the motion and plead guilty. So all in my head, after she told me she was going to get me 15, that is all I had in my head, that I was going to get 15 [years]." (*Id.* at 27-28).

Petitioner's brother and former girlfriend both also testified at the hearing. Both confirmed that they had spoken with Petitioner's trial counsel both in person and on the phone. (*Id.* at 35-50). Both likewise testified that counsel had told them that she could ensure that Petitioner would receive a sentence of fifteen years. (*Id.*).

The final witness at the hearing was Petitioner's trial counsel, Kathleen Theurer. (*Id.* at 50). Counsel testified that it was her usual practice to discuss all plea offers with her clients and to explain the pros and cons of pleading guilty rather than going to trial to them. (*Id.* at 52-53). She likewise testified that she will discuss the applicability of the sentencing guidelines, including by obtaining the client's criminal history, determining the most likely history category, and calculating the probable sentences for clients when discussing and considering plead offers. (*Id.* at 54-55). Counsel likewise testified that it is her usual practice to discuss with clients the applicable statutory minimums and maximums when considering an offered plea deal. (*Id.* at 55).

Turning to Petitioner's case specifically, counsel testified that she had negotiated on Petitioner's behalf extensively, rejecting at least one plea offer because it would not permit arguments for sentence reductions, and ultimately obtained for Petitioner an offer which would permit her to argue for a mandatory minimum sentence of ten years. (*Id.* at 56-63). As to the specific term, counsel testified that she calculated all of the possible sentences Petitioner would face depending on which enhancements were found to apply and explained to Petitioner that he could face any number of different sentencing ranges depending on the career criminal enhancement, the role enhancement, and similar guidelines, and stated that she provided Petitioner with each of those ranges. (*Id.* at 56-63, 69-73). During both direct and cross-examination, as well as when questioned directly by this Court, counsel firmly denied ever having promised, advised, or otherwise suggested that Petitioner was likely or would receive a fifteen year sentence. (*Id.* at 56-73). Counsel specifically stated to this Court that she never discussed fifteen years with Petitioner, never promised to speak with this Court in chambers regarding a fifteen year sentence, and never attempted any such ex parte contact with this Court. (*Id.* at 60-61). Ultimately, counsel's testimony was that she could not provide a firm answer as to what Petitioner's sentence would have been, that she told him that his sentence would be in the discretion of this Court alone, that she would argue for a ten year sentence, but that it was likely, based on her guidelines calculations, that Petitioner would receive a much longer sentence which would depend largely on this Court's guidelines findings. (*Id.* at 56-63). Counsel likewise testified that she had never told Petitioner's then girlfriend or brother that Petitioner would likely receive a fifteen year sentence. (*Id.* at 57-58).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. Credibility Determinations

Having had the opportunity to observe the demeanor and testimony of the witnesses at the evidentiary hearing held on April 28, 2016, this Court makes the following findings as to the credibility of the witnesses who testified at the hearing. This Court finds the testimony of trial counsel, Kathleen Theurer, extremely credible. The Court specifically credits Ms. Theurer's testimony that she calculated and provided Petitioner with several guidelines ranges to which he might be subject based upon this Court's guidelines calculation, and her testimony that she never

9

promised a fifteen year sentence, a promise which counsel could in no way keep had she made it. This Court likewise finds credible counsel's assertions that she never made any such promises to Petitioner's girlfriend or brother. Counsel's testimony was direct, reasonable, and responsive to the posed questions, and this Court observed nothing which would give it any reason to doubt her credibility.

This Court finds the testimony of Petitioner, his former girlfriend, and his brother less credible based on their demeanor during testimony and the nature of that testimony. Although Petitioner and his witnesses were responsive to questioning, this Court notes that each has strong motivation to misremember their conversations with counsel prior to sentencing based on their relationship with Petitioner and obvious interest in his early release. This Court specifically finds incredible Petitioner's assertion that counsel promised that she would speak to this Court in chambers and ensure a fifteen year sentence, and likewise finds questionable at best Petitioner's assertion that he believed he was certain to receive a fifteen year sentence even after being told that this Court alone would determine his sentence in the plea agreement, his Rule 11 application, and during Petitioner's plea colloquy, all of which Petitioner told this Court he understood during his plea hearing. Thus, having observed the testimony of the witnesses and having had the opportunity to consider their demeanor and body language, and having considered their testimony, this Court finds the testimony of Petitioner, his brother, and Petitioner's former girlfriend far less credible than that of trial counsel.

## C. Analysis

Following the evidentiary hearing in this matter,[1] Petitioner's motion presents a single claim: that counsel was constitutionally ineffective in advising him in regard to his guilty plea. The standards applicable to ineffective assistance claims are well established:

> In *Strickland v. Washington*, [466 U.S. 668] (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims. The first part of the Strickland test requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." [*Id.* at 687] (internal citations omitted). The second part specifies that the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Id.* at 694]. We have reasoned that "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).
>
> The year after deciding Strickland, the Supreme Court slightly modified the prejudice prong of the Strickland test in connection with guilty pleas. *See Hill v. Lockhart*, [474 U.S. 52] (1985). "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [*Id.* at 59] (internal quotations omitted). The Court has re-emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, --- U.S. ---, 132 S.Ct. 1376, 1384[] (2012).
>
> When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed

---

[1] In his original petition, Petitioner also presented two additional claims of ineffective assistance of counsel – that trial counsel had been ineffective in failing to investigate his case by interviewing his co-defendants, discussing with him the law regarding wiretaps, and in investigating the Government's purported drug weight calculation, and a claim that appellate counsel failed to argue that his plea was invalid on appeal despite being paid twenty thousand dollars. Petitioner, however, withdrew both of those claims during the evidentiary hearing and chose to proceed solely on his plea/sentencing exposure ineffective assistance claim. (*See* ECF No. 13 at 5-9).

> decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S.Ct. 1340[] (2014). We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent...." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003). However, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

*United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015). A plea hearing is adequate to dispel any erroneous sentencing predictions so long as the petitioner is informed at that hearing of the maximum setence to which he is exposed, the effects of the sentencing guidelines on his sentence, and as to the Court's discretion in sentencing. *Shedrick*, 493 F.3d at 299; *see also United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001).

Based on the testimony at the evidentiary hearing, this Court finds that Petitioner has failed to establish either prong of the *Strickland* test, and thus fails to establish ineffective assistance of counsel. As to counsel's performance, and in light of this Court's credibility determinations, it is clear that Petitioner was not promised a fifteen year sentence, and that counsel instead provided Petitioner with several sentencing calculations addressing the various potential sentences Petitioner would face depending on this Court's guidelines calculations. It is clear from Ms. Theurer's very credible testimony that she knew the guidelines and relevant precedent, and that she provided petitioner with more than sufficient information regarding the sentencing exposure Petitioner faced in pleading guilty as opposed to going to trial. As Petitioner was clearly given adequate advice based on counsel's credible testimony, and as Petitioner was not given an

erroneous promise of a fifteen year sentence, Petitioner has failed to show that counsel's performance in relation to the plea offer was deficient. *Bui*, 795 F.3d at 366-67.

Even had Petitioner been able to show that counsel had been deficient, however, it is doubtful under these facts that Petitioner could show that he suffered any prejudice. In this case, the plea agreement, Rule 11 application, and this Court's colloquy with Petitioner all clearly and repeatedly informed Petitioner that he faced a ten year mandatory minimum, a maximum sentence of life, and that his sentence would be in this Court's sole discretion after a consideration of the guidelines and relevant sentencing factors. Petitioner specifically confirmed that he understood all of this information during his plea colloquy with this Court. It is clear from the colloquy, the plea agreement, and the Rule 11 application that Petitioner was also directly informed that any estimate he received from counsel was just that – an estimate – and that this Court's discretion would ultimately decide his sentence regardless of any promises made to him. Petitioner's colloquy with this Court likewise confirmed that he told this Court that he understood that fact. Given the fact that Petitioner was clearly made aware of the applicable statutory minimum and maximum, and that Petitioner was directly informed of this Court's sentencing discretion and the non-binding nature of the plea agreement and any estimates made by counsel or the Government, it appears that any prejudice Petitioner could have suffered from the alleged promise of a fifteen year sentence was rectified by the plea colloquy conducted by this Court, especially in light of the information provided to Petitioner in the plea agreement and Rule 11 application. *See Bui*, 795 F.3d at 366-67; *Shedrick*, 493 F.3d at 299. Thus, even if this Court had not found Petitioner's claim that counsel promised him a fifteen year sentence incredible, Petitioner has failed to establish that he suffered *Strickland* prejudice as a result of the alleged promises. Petitioner has thus failed to establish either prong of the *Strickland* test and is clearly not entitled to habeas relief.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Based on this Court's credibility findings as well as the relevant case law, it is clear that Petitioner's sole remaining claim is clearly without merit, that Petitioner has thus failed to make a substantial showing of the denial of a constitutional right, and that jurists of reason could not disagree with this Court's conclusion that Petitioner's ineffective assistance of counsel claim is without merit. As such, Petitioner has failed to show that his claims are adequate to deserve encouragement to proceed further, and a certificate of appealability shall therefore be denied.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate his sentence (ECF No. 1) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Hon. Jose L. Linares,
United States District Judge

DATED: September 19, 2016

14